CANNON vs. THE HOME INSURANCE COMPANY OF NEW YORK.

*November 23 — December 13, 1881.*

INSURANCE AGAINST FIRE. *(1) A contract held to be one of reinsurance. (3) Whether breach of policy relied on must be specially pleaded. (4, 5) Waiver of breach by requiring proofs of loss.*
REVERSAL OF JUDGMENT. *(2) When judgment not reversed for admission of improper evidence.*

| | |
|---|---|
| 53 | 585 |
| 74 | 96 |
| 53 | 585 |
| 82 | 118 |
| 53 | 585 |
| 84 | 204 |
| 53 | 585 |
| 92 | 50 |
| 53 | 585 |
| 94 | 546 |
| 53 | 585 |
| 97 | 69 |
| 53 | 585 |
| 114 | 4521 |
| e114 | 5522 |

1. The facts alleged in the complaint herein are *held* to show an original undertaking by defendant in the nature of a contract of *reinsurance,* and not merely a contract of guaranty.

2. The admission of improper evidence to establish a fact not controverted, is no ground for reversal.

3. *Quære* whether, in an action on an insurance policy, a breach by the assured of a condition relative to additional insurance can be shown as a defense unless specially alleged in the answer.

4. Where there has been a breach of a condition in an insurance policy, and the insurer, with full knowledge thereof, and without denying its liability on that ground, requires the assured to furnish, and he does furnish at some trouble and expense, proofs of a loss under the policy (whether first or additional proofs), such breach cannot be set up as a defense to an action on the policy.

5. The assured having furnished imperfect proofs of loss, and his attorneys having inquired of the insurer what its position was in relation to the claim, the latter, without referring in any manner to any breach of the

conditions of the policy, answered that if the assured had a fair and legal claim he "should make out such proofs as the policy requires and send here, and, on receipt of the same," the claim should be investigated, and the attorneys should be promptly advised of the insurer's views. *Held*, a waiver of any breach of the conditions of the policy then known to the insurer.

APPEAL from the Circuit Court for *Waupaca* County.

The complaint alleges, among other things, the execution and delivery to the plaintiff, by the Roger Williams Insurance Company of Providence, R. I., of a policy of insurance against fire, and various renewals of the same continuing it in force to March 1, 1880; that it was provided in said policy that, in case of loss or damage by fire, the insured should forthwith give notice thereof to the company, and, as soon thereafter as possible, render a particular account of such loss, signed and sworn to by the assured, stating whether any and what other insurance had been made on the same property, giving copies of the written portions of all policies thereon, also the cash value of the property and their interest therein, for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss, when and how the fire originated, etc.; that in June, 1879, the plaintiff made other and additional insurance on the property; and that, "prior to the time of the fire hereinafter mentioned, the defendant had full knowledge and notice of such additional insurance;" that on or about July 1, 1879, the defendant, the *Home Insurance Company*, "for a valuable consideration, duly promised and agreed to and with the said Roger Williams Insurance Company, to pay and make good to this plaintiff all loss and damage caused by fire to said insured property, according to the terms and conditions of said first mentioned policy, and the said several renewals thereof; that this plaintiff has heretofore duly ratified and accepted the said promise and agreement, . . . . and duly notified the said defendant thereof;

that, at divers times prior to the commencement of this action, the said defendant duly admitted to this plaintiff its liability to him on all claims and demands arising under the policy of insurance issued to this plaintiff by the said Roger Williams Insurance Company and the several renewals thereof as hereinbefore set forth; that by reason of such admissions this plaintiff was induced to believe, and did believe, that said defendant would pay and make good to this plaintiff any sum due or to become due under said policy, and this plaintiff was thereby subjected to great expense, trouble and delay in making additional proofs, by corresponding with the said defendant, and by forbearing for several months to bring any action for the recovery of the amount due to this plaintiff under said policy." After alleging a loss by fire, October 28, 1879, the complaint further states that "the said insured, after said fire, gave immediate notice to the said Roger Williams Insurance Company, and to said defendant, of the loss occasioned thereby, and, more than sixty days before the commencement of this action, to wit, on or about the 25th day of November, 1879, this plaintiff duly delivered to the said Roger Williams Insurance Company due proofs of said loss, which said proofs of loss were received, accepted and retained by the said Roger Williams Insurance Company; that on the first day of May, 1880, this plaintiff duly delivered to said defendant other and additional proofs of said loss, and duly demanded payment of the sum which this plaintiff is entitled to recover of the defendant by the terms of the policy; . . . that said additional proofs of loss were furnished as aforesaid at the special instance and request of the defendant; that at the time of making said request the said defendant had full knowledge and notice of the additional insurance aforesaid upon said insured property, and that this plaintiff had furnished proofs of loss to the said Roger Williams Insurance Company as aforesaid; that by reason of such request by the said defendant, this plaintiff was induced to furnish the

additional proofs of loss aforesaid, and was thereby subjected to great expense and delay; that the defendant has received, accepted and retained the said additional proofs of loss, and has not demanded any other or further proofs of loss, but has neglected and refused to settle or adjust said loss, or to pay the same or any part thereof, though often requested so to do by this plaintiff."

The answer denies all the allegations of the complaint respecting the defendant's agreement to become liable, and admissions of liability, under the policy of the Roger Williams Insurance Company. It admits that about May 1, 1880, the plantiff gave to defendant proofs of loss, but alleges that the same were not additional proofs, and were furnished without the special instance and request of defendant. It further denies that at the time of such alleged request the defendant had knowledge or notice of the additional insurance upon the property, or that the plaintiff had furnished proofs of loss to the Roger Williams Insurance Company, and denies that the defendant accepted and retained the so-called additional proofs of loss.

Upon the trial, the defendant objected generally to the introduction of any evidence under the complaint. The objection was overruled. Other facts will sufficiently appear from the opinion.

There was a verdict for the plaintiff; and from a judgment thereon, the defendant appealed.

The cause was submitted for the appellant on the brief of *Finches, Lynde & Miller.* They contended, among other things: 1. That the complaint does not state facts sufficient to constitute a cause of action. It appears on the face of the complaint that the contract is one of guaranty. There is no averment that the defendant is authorized by its charter to guaranty the payment of insurance made by other companies, and the contract is apparently *ultra vires. Madison, Watertown & Milwaukee P. R. Co. v. Watertown & Port-*

*land P. R. Co.*, 7 Wis., 59. If the contract should be held one of reinsurance, the complaint is fatally defective in not alleging that proofs of loss were duly and seasonably served upon the defendant. One of the conditions of the policy was, that notice should be "forthwith." given of the fire, and "as soon thereafter as possible" proofs of loss should be served. The fire occurred October 26, 1879, and proofs were not served on the Roger Williams Company until nearly one month thereafter, and only "additional" proofs of loss served on the defendant on May 1, 1880, nearly six months after the fire. Flanders on Ins., 31. Plaintiff had no claim on defendant as a reinsurer. Flanders on Ins., 34. 2. That the statements of the agent to the plaintiff were merely hearsay. Declarations or statements of an agent, to be admissible, must be made at the time of the transaction. *Mil. & Miss. R. R. Co. v. Finney*, 10 Wis., 388; *Packet Co. v. Clough*, 20 Wall., 529. 3. That a mere suggestion by the company that proofs of loss (which the party is under contract to furnish before he can have a cause of action on his policy) should be served, accompanied with a statement that the case will then be investigated, and if any questions thereafter arise they can or may be adjusted, is not a waiver of all or any defenses on the policy, growing out of breaches of the covenants, although such breaches were known to the company at the time. See *Phœnix Ins. Co. v. Stevenson*, 8 Ins. Law J., 922; *Fitchpatrick v. Hawkeye Ins. Co.*, 53 Iowa, 335.

For the respondent there was a brief by *Barnes & Goodland*, and oral argument by *Mr. Goodland:*

1. The facts stated in the complaint show an original undertaking on the part of the defendant, upon which the plaintiff may sue, and not a mere guaranty. *Putney v. Farnham*, 27 Wis., 187; *Bassett v. Hughes*, 43 id., 319; *Glen v. Ins. Co.*, 56 N. Y., 379. The allegations that proofs of loss were furnished at the request of the defendant, and were received, accepted and retained by the defendant, show a waiver of all

defects relating to proofs of loss, whether in the proofs themselves or in the manner or time of service. *Killips v. Ins. Co.*, 28 Wis., 472; *O'Conner v. Ins. Co.*, 31 id., 160; *Palmer v. Ins. Co.*, 44 id., 201; *Badger v. Glens Falls Ins. Co.*, 49 id., 389; *Badger v. Phœnix Ins. Co.*, id., 396; Wood on Ins., 716. 2. The question of a breach of the condition of the policy is not in the case, such breach, or even the existence of such a condition, not being alleged in the answer. *Redman v. Ins. Co.*, 49 Wis., 431; Wood on Ins., sec. 495. 3. The defendant waived any breach of condition by recognizing the continued validity of the policy, when called upon to act under it, with full knowledge and notice of the breach. *Webster v. Ins. Co.*, 36 Wis., 72; *McBride v. Ins. Co.*, 30 id., 562; *Gans v. Ins. Co.*, 43 id., 110; *Appleton Iron Co. v. Ass. Co.*, 46 id., 23; *Titus v. Ins. Co.*, 81 N. Y., 410; *Penn. F. Ins. Co. v. Kittle*, 39 Mich., 51; *Ins. Co. of N. A. v. Hope*, 58 Ill., 75; *Lycoming Ins. Co. v. Dunmore*, 75 id., 14; *N. W. Mut. L. Ins. Co. v. Germania Ins. Co.*, 40 Wis., 446.

COLE, C. J. One or two preliminary questions must be noticed before we come to the real defense in this case. It is objected that the court below erred in admitting evidence under the complaint. The specific objection is, that the complaint shows on its face that the contract sued on is one of guaranty, and it does not appear that the defendant was authorized, under its charter, to make such a contract. The facts stated show clearly an original undertaking on the part of the defendant; or, in other words, set forth a contract of reinsurance. About this, it seems to us, there can be no doubt. But it is further objected that it is not alleged that proofs of loss were duly and seasonably served upon the defendant. A reference to the complaint will show that this point is untenable. Again, it is insisted that the court erred in allowing the plaintiff to testify, against objection, as to the statements or declarations made to him by Pope, the local agent of the defendant. These state-

ments were made by the agent before the loss, and were, in substance, that the defendant company had assumed the risks, in this state, of the Roger Williams Insurance Company (of which the plaintiff's was one); and that the defendant company was sound, and plaintiff's insurance was all right and would be renewed when it expired, should the plaintiff so desire. The object of this testimony was doubtless to show that the defendant had assured the risks of the Roger Williams Company, and was therefore liable to the plaintiff on his policy issued by that company. But the testimony was entirely harmless, in view of the fact that the defendant company, by its agents, always admitted that it had assumed the risks of the Roger Williams Company, and was liable for all legal claims under policies issued by that company. That was really not a controverted fact in the case.

The real defense to the action was, that the plaintiff had obtained a subsequent insurance without the consent of the Roger Williams Company, in violation of an express condition in that policy; consequently that the policy was avoided, and the defendant was not liable for the loss upon it. But it is claimed by the plaintiff's counsel that this question is not in the case, because, as he insists, no such ground of defense was set up in the answer, as it should have been, to render it available. It is certainly true that the answer does not rely upon a breach of the conditions relative to subsequent insurance; and it is very questionable whether that defense was open to defendant. *Redman v. Ætna Ins. Co.*, 49 Wis., 431. This was a special defense, and, we are inclined to think, should have been distinctly set up in the answer in order to allow evidence of it. But, without expressly deciding the point, we pass to a consideration of the question whether the defendant was in a position to take advantage of the breach in regard to subsequent insurance, and insist upon a forfeiture on that ground.

The insured property was destroyed on the 28th of October,

1879. The witness Hall testified that he was the state adjuster of the defendant when he visited New London, where the insured property was situated, on the 13th of February, 1880. He says: "I saw the plaintiff and had a conversation with him at that time. I had knowledge that *Cannon* had additional insurance on the property in the Phœnix Insurance Company of Brooklyn. I ascertained that fact at the time, by seeing the policy. I am not quite certain whether I had been informed of it by correspondence or not. I ascertained it then, at all events, if not before. I examined that policy and the policy of the Roger Williams, and I reported the fact to Mr. Durand of the additional insurance. I made that report to him within two or three days after I saw the policy."

So it will be seen that the defendant had full knowledge of the subsequent insurance, in February, 1880. On the 5th of April following, Barnes & Goodland, as attorneys of the plaintiff, addressed a letter to Ducat & Lyon, managers of the defendant at Chicago, saying their client had put into their hands for collection a claim arising out of policy No. 6,117, issued by the Roger Williams Insurance Company, which it seemed was reinsured in the *Home Company*. They say: "Before taking any steps, we desire to know what the position of your company is in relation to the claim, and will add, if possible, we prefer to settle the same without litigation." To this communication, Mr. Durand, the general adjuster of the defendant for the western department, replied on the 10th, saying: "We do not understand what *J. H. Cannon* bases his claim against us or the Roger Williams Insurance Company on, as we have never received any proofs of loss; neither has the Roger Williams Insurance Company. Now, if *Mr. Cannon* has a fair and legal claim for loss under the Roger Williams Insurance Company policy No. 6,117, he should make out such proofs as the policy requires, and send same here; and on receipt of same, the claim shall be investigated at once, and you shall be promptly advised of our views of the same. If any question

shall then arise touching the same, we think you and we can adjust it without anybody's intervention."

Thereupon the plaintiff proceeded and made out proofs of loss at an expense of $25 paid his attorneys, besides loss of time and some personal expense incurred in traveling, and sent them to Mr. Durand on the 29th of April.   On the third of May, Mr. Durand, in a letter to Barnes & Goodland, acknowledged the receipt of proofs of loss, and said: "It appears that *Mr. Cannon* obtained a subsequent policy in the Phœnix Insurance Company on the same property without the consent of the Roger Williams Insurance Company, in violation of an express condition in their policy, and which rendered the same void.   There are, however, two items in the Roger Williams policy, that may not have been covered by the Phœnix policy, which we will pay by way of compromise, though not liable for them."   Then follows quite a lengthy correspondence (which was put in evidence) between Messrs. Barnes & Goodland on the one side, and Mr. Durand and the firm of Finches, Lynde & Miller on the other, as to the liability of the defendant for the loss.   The plaintiff's attorney insisted in the correspondence, as they now insist, that the defendant was liable, because, with full knowledge of the additional insurance, it elected to treat the policy as still in force — as it was claimed it did by the letter of Mr. Durand of April 10th,— and thereby had waived the breach of the condition in that regard.   The proposition upon which counsel rely is this: that a party cannot occupy inconsistent grounds or positions; that one who relies upon the forfeiture of a contract cannot, at the same time, treat the contract as an existing, valid one, nor call upon the other party to the contract to do anything required by it; or, to apply the proposition to the precise facts in the case, that, as the defendant, in its correspondence with the attorneys of the plaintiff, after full knowledge of the forfeiture, saw fit to call for additional proofs of loss, recognizing by this act the continued validity of the policy, it could

not, after the plaintiff had gone to the expense and trouble of furnishing these proofs, change its ground and claim that the policy was no longer in force.

We think this position is sound in law and amply sustained by the doctrine of the adjudged cases. The cases of *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; *N. W. M. L. Ins. Co. v. Germania F. Ins. Co.*, 40 Wis., 446; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis., 108, directly affirm that principle. It is deemed unnecessary to attempt, by argument, to fortify the doctrine of those cases. We think they rest upon impregnable grounds, and are consistent with reason and sound principle. They certainly settle the rule of law for this state. Nor is the doctrine affirmed in them peculiar to this court. In a recent case decided by the court of appeals of New York, the law is stated in substantially the same language as that used above: "When there has been a breach of the condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interest, choose to waive the forfeiture; and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until a claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is, as matter of law, waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel." *Titus v. Glens Falls Ins. Co.*,

AUGUST TERM, 1881.   595

Cannon vs. The Home Ins. Co. of New York.

81 N. Y., 410–419. *Penn. Ins. Co. v. Kittle,* 39 Mich., 51, approves apparently of the *Gans Case,* and lays down the same rule of law as to the effect of waiver of a forfeiture.

But the learned counsel for the defendant refers to *Fitch-patrick v. Hawkeye Ins. Co.,* 53 Iowa, 335, and *Phœnix Ins. Co. v. Stevenson,* 8 Ins. Law J., 922, as laying down a different or the correct rule on this subject. In the Iowa case the insured property had become vacant, and there was a condition in the policy to the effect that the company should not be liable for any loss which occurred during the time the building was vacant. The policy also provided that the proofs of loss should state the facts in regard to the occupancy. The court holds that the company, in demanding proofs of loss, as disclosed in the evidence, did not waive the forfeiture, because it "did not have full notice of the time during which the building had been unoccupied, and the circumstances attending the vacancy of the house. Notice of these things was imparted by the proofs of loss." The court distinguished, therefore, that case from the *Webster Case* and the *N. W. Mut. Life Case,* decided by this court. It is quite clear that there is no necessary conflict between the doctrine of the Iowa court and that of this court. Much of the reasoning in the Kentucky case is quite irreconcilable with our decisions. But the court, in the opinion, lays down the proposition that if the insured is misled to his prejudice by a reasonable and justifiable reliance upon the acts and conduct of the insurer, that he will not insist upon the breach of condition, then the waiver or estoppel attaches, whether it was so intended by the insurer or not; and that in general, to work an estoppel, the party against whom it is attempted to be used must be in possession of all the facts, and the party attempting to plead it must have relied upon the representation or conduct of the party against whom the plea is interposed, and must thereby have been misled to his injury. No objection can be taken to the law as thus stated. But we have serious doubts as to whether the facts, as

we understand them, did not fully bring the case within the proposition of law laid down; for the company knew of the additional insurance when the general agent wrote the letter of February 12, 1878. In that letter the local agent was directed to inform the insured that if he had any claim against the company under his policy, such claim must be made in accordance with its conditions. Thereupon the insured made additional proofs of loss. The court say, as the insured, when he made his first abortive effort at proof of his claim, was fully aware that by taking other insurance he had forfeited his policy, it was difficult to conceive how he could have inferred from the contents of the letter that the company intended to waive any substantial or technical defense it might have. But it seems to us the company, if it intended to take advantage of the breach, should have said to the insured, in so many words, that it would insist upon the forfeiture of the policy in consequence of the subsequent insurance. There would then have been no kind of doubt as to its position in the matter. Fair, frank dealing required the company to say this if it said anything upon the subject. Of course the policy was voidable at the election of the company. "And an insurance company cannot sleep upon its intention to avoid the policy, to the prejudice of the insured. The forfeiture may be waived by the laches of the insurance company misleading persons interested in the policy to their prejudice." RYAN, C. J., in *Appleton Iron Co. v. B. A. Assurance Co.*, 46 Wis., 33.

The Kentucky court refer to both the *Webster* and *Gans Cases*, without expressly dissenting from the decision in either, but withholding approval from the reasoning in the latter case; and, with all our respect for the great intelligence and ability of that court, we must withhold our assent to what is said in the *Stevenson Case* upon this point of waiver. It seems to be in conflict with the rule as settled by this court, which we deem sound, and by which we shall abide.

Some comment is made by defendant's counsel upon Mr.

Durand's letter of April 10th.   He claims that it does not amount to a recognition of the existing validity of the Roger Williams policy.   We place a different construction upon the letter, and think it does amount to an unqualified recognition of the validity of that policy.   If it does not, it would be difficult to conceive what language could be used which would express that meaning.   If the company intended to take advantage of the forfeiture, why did not Mr. Durand say so, instead of saying what he did?   He is a very intelligent insurance agent, of large experience in those matters, and fully posted on insurance law.   He well understands the use of language, and can state a point as clearly as any one, as the correspondence put in evidence proves.   Why, then, did he not say, in answer to the first letter of Barnes & Goodland, that the Roger Williams policy was forfeited because the plaintiff had obtained additional insurance upon the property without the consent of that company, and that the defendant would insist upon the breach of the condition in that regard? There surely would be no claim to "be investigated," had the defendant put itself on this distinct ground.   But the plaintiff was informed that he must make out such proofs of loss as the policy required, and send the same to him.   It is true, Mr. Durand does not promise that the company will pay the claim, if, on investigation, he finds no other defense to it; but this is fairly implied from the language of the letter.   Certainly no breach is mentioned, no forfeiture insisted upon. And the plaintiff proceeded and made out proofs of loss, according to the invitation, suggestion or hint contained in the letter.   Why is not the defendant estopped from claiming the forfeiture under the circumstances?   "An estoppel arises where the insurer, having knowledge of the facts to which he has a right to take exceptions, or which would constitute a defense against any claim under the policy, if he chose to avail himself of them, so bears himself thereafter, in relation to the contract, as fairly to lead the assured to believe that the in-

surer still recognizes the policy to be in force, and to consti-
tute for him a valid protection.   Under such circumstances
the courts refuse to allow the insurer to take an unfair advan-
tage of the acts, declarations or omissions of the insured, to
his prejudice."   May on Ins., § 507.   The facts of this case
bring it fully within that principle; for certainly the plaintiff
must have been misled to his prejudice by the acts and con-
duct of the defendant in treating the policy as still in force.
Such being the case, the waiver or estoppel attaches.

The same learned counsel attempts to draw a distinction
between the case where the insurer calls for "first proofs" of
loss, and "additional proofs."   The former, he says, the in-
sured is bound to furnish under his contract before he can
have a cause of action under his policy.   He insists that, as
in this case it was the "first proofs" which were required to
be furnished, the waiver or estoppel does not apply.   We
shall not stop to inquire whether the proofs called for were
"first proofs" or "additional proofs."   Were it material in
our view, we should have no hesitation in holding that they
certainly were not the first proofs of loss; for the plaintiff
testified that he sent those to the Roger Williams Company
in November.   But we think there is no good reason for
making the distinction between a case calling for first proofs
and one calling for additional proofs.   The question is, Was
the insured, in relying upon the acts or conduct of the insurer
treating the contract as still in force, misled to his injury or
prejudice?

Upon the whole record, we think the judgment is correct
and must be affirmed.

*By the Court.*— Judgment affirmed.