JOSEPH SIGERELLA, defendant below, plaintiff in error *vs.* STATE OF DELAWARE, plaintiff below, defendant in error.

*Rape—Using Female under Eighteen Years of Age—Statutes—Repeal—Election by State as to Crime—Elements of Rape—Petit Jury for Several Courts; Summoning—Irregularity—Attendance—"Day Assigned" for Court of Oyer and Terminer—Evidence.*

1. *Section 10, Chapter 127, Revised Code,* (1893) *page 924,* making rape, or the carnal knowledge and abuse of a female child under the age of seven years, a felony, is not impliedly repealed by *Chapter 686, Volume 18, Laws of Delaware, page 951* as amended by *Chapter 127, Volume 20, Laws of Delaware, page 192,* making it a misdemeanor to take, receive, employ, harbor, use, etc., a male or female, under the age of eighteen years, for the purpose of sexual intercourse.

2. Rape is the carnal knowledge of a woman by force and against her will.

3. A rape can only be committed against the will of the female and by force, or by putting her in great fear. When the female does not consent the law implies force. The act must be against her will, if from her mental condition she has a will.

4. In rape, the element "by force and against her will" does not apply in cases of females under the age of seven years. In such cases, sexual intercourse being shown, the law conclusively presumes that there was, force and against the will of such female.

5. A man having had sexual intercourse with a woman, under eighteen years of age, by force and against her will, may be prosecuted under the act for the better protection of female children, being *Chapter 686, volume 18, Laws of Delaware, page 951,* as amended, or for rape, at the election of the State.

6. The words "day assigned" for holding a Court of Oyer and Terminer, as used in *Section 12, chapter 244, Volume 24, Laws of Delaware, page 652,* means every day fixed by the Judges for holding that Court, whether by precept or adjournment from time to time.

7. Under *Section 12, Chapter 244, Volume 24, Laws of Delaware, page 652,* the regular panel of 40 petit jurors in attendance on the Superior Court or Court of General Sessions at the time a trial is had in theCourt of Oyer and Terminer must serve as part of the panel of the petit jurors of that Court.

8. Petit jurors bound to be in attendance upon the Superior Court or Court of General Sessions, and being present at the time a trial is had in the Court of Oyer and Terminer, constitute a part of the panel of the petit jurors for the Court of Oyer and Terminer.

9.   The object of summoning jurors is to assure their attendance and to give the Court jurisdiction over the person of a juror who fails to attend after being summoned.

10.   Failure to summon jurors in the manner provided by the statute is available to the juror only in proceedings against him for non-attendance, and does not affect his competency.   If he was regularly drawn and attends, the parties cannot object to the irregularity.

11.   Where, in a prosecution for rape, the prosecutrix, a child of eleven years of agè, testified that she was hurt and made to bleed at the time the crime was committed and it appears, that she had submitted to other prior acts of sexual intercourse, it was *held*, the testimony of a physician that she examined the prosecutrix four months after the offense and found a scar on her private parts made after the other prior acts of intercourse was properly admitted.

12.   When, in a prosecution for rape, it is shown that the accused, was living in the same room and sleeping in the same bed with the mother, and the prosecutrix, and that the mother was present aiding and abetting when the crime was committed, it was *held* that the exclusive evidence, that the relations of the prosecutrix and the accused were friendly during the week of the offense was not prejudicial.

Del. Statute Rev. Code 924, Chap. 127, Sec. 10: 18 Del. Laws 951 (amended by 20 Del. Laws 192, Chap. 127); 18 Del. Laws 951, Chap. 686; 24 Del. Laws 652, Chap. 244 Sec. 12.

(*January* 18, 1910.)

Judges CONRAD, WOOLLEY and HASTINGS sitting.

*Hugh M. Morris* for plaintiff in error.

*Josiah O. Wolcott*, Deputy   Attorney-General, for defendant in error.

Supreme Court, June Term, 1909.

WRIT OF ERROR (No. 2, June Term, 1909) to the Court of Oyer and Terminer of the State of Delaware, in and for New Castle County.

HASTINGS, J., delivering the opinion of the Court: ˙

Joseph Sigerella, the plaintiff in error, was indicted for the crime of rape, the charge being that he did on the second day of January, 1908, in Wilmington Hundred, violently and feloniously make an assault on one Mildred Virginia Poore, and her did vio-

Opinion.

lently, forcibly and against her will feloniously ravish and carnally know. The defendant in the indictment entered his plea thereto in the Court of Oyer and Terminer, on the fifth day of March, 1909; on the seventeenth of the same month he was placed on trial and on the day following was found guilty.

Subsequently a writ of error was taken to this Court, and the errors assigned are twenty-three in number.

In considering these assignments of error we shall divide them into four classes of questions, as follows:

*First:* Whether the Court of Oyer and Terminer had jurisdiction of the case;

*Second:* Whether the jury were qualified to sit and determine it;

*Third:* Whether the Court below improperly charged the jury; and

*Fourth:* Whether evidence was improperly admitted or rejected at the trial.

*First:* The defendant below was indicted under *Section* 10, *Chapter* 127, *Revised Code*, which provides as follows:—"Every person who shall commit the crime of rape, or who shall carnally know and abuse a female child under the age of seven years, shall be deemed guilty of felony and shall suffer death."

It appears from the record of the evidence in the case that the prosecutrix was a child eleven years of age. Counsel for the plaintiff in error contends that the Court of Oyer and Terminer was without jurisdiction, "for the reason that the law respecting the crime of rape prior to the year 1889 was repealed by an Act passed by the Legislature in that year, entitled, 'An Act for the Better Protection of Female Children,' being *Chapter* 686, *Volume* 18, *Laws of Delaware*." The said last mentiond Act, as amended by *Chapter* 127, *Volume* 20, *Laws of Delaware*, provides as follows:

"Section 1. Whoever takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed, harbored, or used, a male or female under the age of eighteen years for the purpose of sexual intercourse; or whoever being

proprietor or proprietress of any house of prostitution, reputed house of prostitution, or assignation, house of ill-fame or assignation, harbors or employs any male or female in any such house, under the age of eighteen years, under any pretext whatever, shall be deemed guilty of a misdemeanor and upon conviction thereof in the Court of General Sessions  *  *  *  of this State shall be fined not more than one thousand dollars, or be imprisoned for a term of not more than seven years, or both, at the discretion of the Court." The amendment above referred to changes the original Act by making the age eighteen years instead of fifteen, and also by making it apply to males as well as females.

The question raised here, for the first time, is whether the Act of 1889, last above quoted, impliedly repealed *Section* 10 *of Chapter* 127 *of the Revised Code*, so far as females under the age of eighteen years is concerned. In other words, is there any inconsistency in statutes which provide a certain punishment for him who (1) shall carnally know and abuse a female child under the age of seven years, (2) who has carnal knowledge of a woman by force and against her will, and a certain other punishment for him who takes or uses a male or female under the age of eighteen years for the purpose of sexual intercourse.

The argument of the counsel for the plaintiff in error, briefly stated in his own language, is as follows:

"(a)  A female under any statutory age of consent is incapable of consenting to sexual intercourse.

"(b)  Then in law it follows that if sexual intercourse is had with a female under the age of eighteen years, it is had where the female does not consent.

"(c)  But sexual intercourse had with a female where she does not consent is rape."

We do not think this contention is based upon authority or good reasoning.

The learned Judge who charged the jury used this language:

"Rape, in this State, has been held to be the carnal knowledge of a woman by force and against her will.  *  *  *

A rape can only be committed against the will of the female and by force, or by putting her in great fear and terror; and if sexual connection is obtained by milder means, or in any other way with the consent or silent submission of the party, it cannot constitute the crime of rape in contemplation of law. When the fact appears that sexual connection has been had against the consent of the woman, the law implies force."

We think this definition of rape and the statement of what constitutes it in law was in every way proper and is supported by the best authorities. Indeed it is almost the identical language used in every reported case of rape tried in this State where the female was above the age of seven years. This is the definition given by Hall, Hawkins, Blackstone and Russell.

"By force and against her will" is a part of the language used in defining rape, and it is also the language used in the indictment. When the female does not consent the law implies force, but that is not all that is required in many instances to constitute rape; it must also be against the will of the prosecutrix, if from her mental condition she has a will. It is true that the last mentioned requirement may be shown in many ways, such as evidence of actual force on the part of the defendant, but it would be a new departure indeed if a female of sound mind could successfully prosecute a man for rape upon the plea that sexual intercourse was had without her consent, it at the same time appearing that it was not against her will.

Bishop in his work on *Criminal Law*, at *Section* 1114, *Volume* 2, says: "under various circumstances there is a wide difference between the act "against her will," and "where," to use the satutory words, "she did not consent."

This rule does not apply, however, to females under the age of seven years. In such cases the only evidence required to constitute rape is the sexual intercourse, the law conclusively presuming there was force and that it was against her will.

But how can it be said the statute of 1889 in any way covers the crime of rape and therefore repeals said *Section* 10? In the first place it protects males as well as females, while the crime

of rape is "the carnal knowledge of a woman," etc., only. By its very terms it protects minors, both male and female, from many wrongful acts. Whether such minors consent to such wrongful acts has nothing whatever to do with the punishment of those who violate its provisions. A man might be tried under a statute for the crime of adultery and it would be wholly immaterial whether the woman with whom he had the sexual intercourse consented or not. If she did consent he might nevertheless be guilty; and if she did not consent and it was by force and against her will, he would then be guilty of rape. But if he were guilty of rape this would not prevent his being prosecuted for adultery, it being the privilege of the State to elect the statute under which it will prosecute.

So with the statute of 1889. If it is by force and against the will of the female, the defendant can be prosecuted under said statute, or he can be prosecuted for rape.

We do not think the Legislature intended to reduce the punishment to a maximum of seven years imprisonment for him who should ravish a female child under eighteen years, at the same time punishing with death him who commits the same crime on females over that age; and we find nothing in the statute that warrants any such construction.

Bishop in his work on *Statutory Crimes*, at *Section* 482, says: "and, as general doctrine, the female's age in rape, not speaking of the carnal abuse of a woman child, need not be averred. Nor, indeed, though she is below the statutory age, is the forcible ravishment of her the less rape."

In the Supreme Court of Errors of Connecticut in the case of *State vs. Worden*, 46 *Conn.* 362, being a charge of rape on a female under the age of ten years, Carpenter, J., delivering the opinion of the Court, said:

"At common law it was legally possible to commit this crime upon one under ten years of age; that is to say, if the crime was in every other respect complete, the mere fact that the victim happened to be under the age of ten years did not make it any the less a crime. An essential element of the offense is

that it be against the will of the female. Our statute was not intended to abolish the crime of rape in respect to children under ten, but on the contrary was intended to punish with proportionate severity an act which did not technically constitute a rape. Hence it provides that every person 'who shall carnally know and abuse any female child under the age of ten years shall be imprisoned in the State prison not less than seven nor more than ten years.' The punishment for rape is imprisonment for life. Here are two distinct offenses. The greater includes the less, as in many other instances, but the less does not extinguish the greater. The latter requires force and the want of consent. The former dispenses with both. The age of the female is not an essential element of the crime of rape, while the statutory offense can only be committed upon children under ten years of age. The statute was manifestly designed to increase, not to diminish, the protection of children of that tender age, and to throw around them additional safeguards,. We are not disposed to defeat the object of the statute by so construing it as to invite evil disposed persons to select as their victims young persons who are least able to protect themselves, and to whom the consequences are likely to be more serious."

*Second:* The fifteenth assignment of error is based upon the refusal of the trial Court to permit the defendant below to challenge for cause the jury that tried the case, the contention of the learned counsel for the plaintiff in error being:

1.  That the petit jury in attendance on March 1, 1909, in the Superior Court and Court of General Sessions, if duly summoned, composed a part of the petit jury for the Court of Oyer and Terminer on March 17th, the day this case was tried; and

2.  That neither the petit jury summoned for March first, nor the one summoned for March fifteenth were summoned to serve as petit jurors for the Court of Oyer and Terminer, and were not therefore qualified to serve as jurors in this case.

In order to clearly understand this contention it will be necessary to set out in some detail the facts with respect to the

drawing and summoning of these jurors, as well as the law touch-
ing the subject.

The record discloses that the regular March Term of the
Superior Court and the Court of General Sessions for the year
1909, began on Monday, March first, and that a petit jury was
properly drawn and summoned to begin their services in said
courts on that date; that another petit jury was also properly
drawn and summoned to begin like service on Monday, March
fifteenth.   It further appears that March third was the day as-
signed for holding the Court of Oyer and Terminer.   The trial
of the defendant below was begun on March  seventeenth, at a
time when the second panel of petit jurors was in attendance
upon the Superior Court and Court of General Sessions, the first
panel having served two weeks and been  discharged  by the
Court.   It also appears by the returns of the Sheriff that neither
of said petit juries were summoned to attend the Court of Oyer
and Terminer, and that only the extra twenty-four jurors were
actually summoned to appear as jurors in the last mentioned
Court.

The law relating to the qualifications, drawing and sum-
moning of jurors in all the Courts is found in *Chapter* 244, *Volume*
24, *Laws of Delaware*, and the material portion relating to this
question is as follows:

"Section 6.   *   *   *   "that no juror drawn to serve in the
Court of General Sessions or the Superior Court, in and for New
Castle County, shall serve for a longer period than two weeks,
unless any juror shall, before the expiration of said period, have
been empanelled for the trial of a cause, in which case any juror
so empanelled shall continue to serve until the rendition of the
verdict in such case or a discharge by the Court."

"Section 12.   *   *   *   "for any Court of Oyer and Ter-
miner sixty-four jurors shall, upon notice of the Sheriff to the Jury
Commissioners that such Court is to be held, be drawn, summoned
and returned according to  the  foregoing provisions for drawing,
summoning and returning Petit Jurors; provided, that if the day
assigned for holding a Court of Oyer and Terminer shall be at a

time when the Petit Jury is in attendance upon the Superior Court or Court of General Sessions, such jury shall constitute a part of the panel of the Petit Jurors to be summoned to attend the said Court of Oyer and Terminer, and only the residue of the said number of sixty-four jurors shall be drawn according to the foregoing provisions."

(a)    Taking up the first point of this contention it will be observed that it is based upon the language used in said *Section* 12, namely, "if the day assigned for holding a Court of Oyer and Terminer shall be at a time when the petit jury is in attendance upon the Superior Court or Court of General Sessions, such jury shall constitute a part of the panel of petit jurors to be summoned to attend the said Court of Oyer and Terminer." The day assigned for holding the Court of Oyer and Terminer was March third, and a petit jury was then in attendance upon the Superior Court and Court of General Sessions, but was not March seventeenth also the day assigned for holding a Court of Oyer and Terminer? We do not think the words "the day assigned" as used in this statute can be confined to the day fixed by the precept, but that it means every day fixed by the Judges for holding said Court, whether that is by precept or by adjournment from time to time. The object of this jury statute with respect to the Court of Oyer and Terminer was to have sixty-four jurors in attendance upon that Court, but it expressly provides that if the Superior Court or the Court of General Sessions is in session on the day assigned for holding said Court, that the forty petit jurors in attendance upon the Superior Court or Court of General Sessions shall constitute a part of the sixty-four jurors and only the remainder of twenty-four shall be drawn. The contention of the learned counsel for the plaintiff in error would have necessitated the presence of one hundred and four petit jurors on March seventeenth, the three courts being in session at that time, sixty-four in attendance upon the Court of Oyer and Terminer and forty in attendance upon the other courts. This we conclude was not contemplated by the statute.

For these reasons we are clearly of the opinion that it is the regular panel of forty petit jurors in attendance at the time the trial is had in the Court of Oyer and Terminer that must serve as part of the panel of the petit jurors of that Court.

(b)   The second point of this contention is based upon the failure of the Sheriff to summon the regular panel of forty jurors, who began their service on March fifteenth, as jurors in the Court of Oyer and Terminer, though they were duly drawn and summoned to attend in the Superior Court and Court of General Sessions and were actually in attendance on the day of the trial.

We are by no means certain that the statute contemplated that the regular panel of forty jurors should also be summoned to attend in the Court of Oyer and Terminer.   The only object of the summons is to assure attendance and to give the Court some jurisdiction over the person of the juror who fails to attend after being summoned, and the statute contemplates a situation in which all of these Courts are in session at the same time and provides that the regular panel of forty jurors in attendance shall constitute a part of the larger panel.   The juror is bound to be in attendance upon the Superior Court and Court of General Sessions and being present, he properly constitutes a part of the panel for the Court of Oyer and Terminer.

In 24, *Cyclopedia of Law and Procedure, at page* 228, the law upon this point is laid down as follows:

"The statutes in some cases provide how the writ of process shall be served upon the individual jurors; but a failure to comply with such provisions is available only to the juror in proceedings against him for non-attendance, and does not affect his competency, and if he was regularly drawn and attends, the parties cannot object to the irregularity."

In the Supreme Court of Michigan in the case of *People vs. Williams*, 24 *Mich.* 161, Judge Cooley in delivering the opinion of the Court, said:

"There is no claim that the jurors were improperly drawn, or that there was any improper conduct by the Sheriff.   The only complaint is that the wrong officer summoned them.   We

think there is nothing in this objection. If the jurors after being properly drawn, had appeared without being summoned at all, no objection could have been taken afterwards, and at most the action of the Sheriff can only be treated as a nullity."

*State vs. Windsor*, 5 *Harrington*, 512, is cited by the learned counsel for the plaintiff in error as sustaining his contention, but it does not appear that the point was argued before the Court or that the Court gave much consideration to the question. The motion was made before the trial and the report merely shows that a new jury was drawn without giving reasons for the Court's decision.

We are very clear that the rights of the plaintiff in error have in no way been prejudiced by any irregularity in the summoning of the jurors, and that therefore it is not reversible error.

*Third:* Without going into the details respecting the charge to the jury, we would say that we have examined it thoroughly and have given most careful study to the objections made to it by the learned counsel for the plaintiff in error, and conclude that it was substantially correct.

*Fourth:* We might say the same thing with respect to the admission or the rejection of testimony at the trial. There are fourteen assignments of error upon this point and we deem it entirely unnecessary to set them out in full or to give any extended reasons for our conclusions upon them.

There are only two classes of them that we have entertained any doubt about, namely:

(a) Admitting evidence of condition of private parts of prosecutrix four months after alleged offense; four acts of sexual intercourse prior to the alleged offense having been shown.

While we think this evidence was of little value, we think it was properly admitted in view of the fact that the prosecutrix testified that she was hurt at the time this assault was made upon her and made to bleed, and the physician who examined her four months afterward found a scar on her private parts that in his opinion was made after the other three acts of sexual intercourse were alleged to have taken place.

(b)   Rejecting evidence showing relations of prosecutrix and defendant during the week of the alleged offense.

Whatever may be said in principle upon this question, we think, from all the facts as disclosed by the record in this case, that the admission of such testimony could not have made any difference in the result of the trial.

This plaintiff in error was at the time the crime is alleged to have been committed, living in the same room and sleeping in the same bed with the mother of the prosecutrix, and the latter testified that her mother was present aiding and abetting when this crime was committed.   The prosecutrix was a child of eleven years of age and we think under these circumstances a jury could not have been influenced by showing that the relations of the two were apparently friendly.

In conclusion we disire to say that we have given most careful consideration to the able arguments of counsel on both sides, and have examined with the greatest care every contention made by the learned counsel for the plaintiff in error and the numerous cases cited in his exhaustive brief, but find in it no reversible error; therefore,

The judgment of the Court below is affirmed.